# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TECHNOLOGY INNOVATIONS, LLC, | : |
| Plaintiff, | : |
| v. | : C.A. No. _____ |
| AMAZON.COM, INC., | : |
| Defendant. | : **JURY TRIAL DEMANDED** |

### PLAINTIFF'S ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Technology Innovations, LLC ("Technology Innovations") files this Original Complaint against Defendant Amazon.com, Inc. ("Amazon"), and alleges as follows:

### PARTIES

1. Plaintiff Technology Innovations is a limited liability company formed and existing under the laws of the State of New York.

2. Plaintiff Technology Innovations has a principal place of business in Estero, Florida, with a mailing address of 21301 S. Tamiami Trail, Suite 320, Estero, Florida 33928.

3. On information and belief, Defendant Amazon is a corporation organized and existing under the laws of the State of Delaware and has a principal place of business located at 410 Terry Avenue North, Seattle, Washington 98109.

4. Upon information and belief, Amazon may be served with process by serving its registered agent in Delaware, Corporation Service Company, at 2711 Centerville Road, Suite 400, Wilmington, DE 19808.

## JURISDICTION AND VENUE

5. This is an action for infringement of at least one United States patent. Accordingly, this action arises under the patent laws of the United States of America, 35 U.S.C. §§ 1 *et. seq.*, and jurisdiction is properly based on 28 U.S.C. §§ 1331 and 1338(a).

6. Amazon, on information and belief, is incorporated in this judicial district and transacts business in this judicial district.

7. Also upon information and belief, Amazon's activities in this judicial district include providing products as described and claimed in United States Patent No. 5,517,407 ("the '407 Patent") and United States Patent No. 7,429,965 ("the '965 Patent"), the patents at issue in this lawsuit.

8. Venue is proper under 28 U.S.C. §§ 1391(b) and (c) and 1400(b).

## CLAIM FOR PATENT INFRINGEMENT

9. Technology Innovations is the owner by assignment of the '407 Patent and the '965 Patent.

10. Michael L. Weiner ("Weiner") is the sole inventor on both the '407 Patent and the '965 Patent and is the Managing Member of Technology Innovations.

11. The '407 Patent, titled "Device For Including Enhancing Information With Printed Information and Method For Electronic Searching Thereof," issued on May 14, 1996. A copy of the '407 Patent is attached hereto as Exhibit A.

12. The application which became the '407 Patent was filed on June 30, 1994, approximately one year before Amazon began selling hardcover and paperback books.

13. On information and belief, Amazon has been a purveyor of hardcover and paperback books since July 1995.

14. The '965 Patent, titled "Apparatus for the Display of Embedded Information," issued on September 30, 2008. A copy of the '965 Patent is attached hereto as Exhibit B.

15. The application which became the '965 Patent was filed on May 18, 2001 and claims priority to a provisional application filed on May 19, 2000, approximately seven and a half years before Amazon began selling Kindle books.

16. Also upon information and belief, Amazon introduced and began selling Kindle books in November of 2007.

17. On May 19, 2011, Amazon announced that, less than four years after introducing Kindle books, Amazon customers were purchasing more Kindle books than all print books – hardcover and paperback – combined.

18. When the applications for the '407 Patent and the '965 Patent were filed, Weiner was familiar with both conventional books and electronic books.

19. When the application for the '407 Patent was filed in 1994, Weiner was aware of the strengths and limitations of how conventional and electronic books displayed their content to readers of the printed information. Those limitations are outlined in the "Background Art" section of the '407 Patent. Exhibit A at column 1, line 36 to column 3, line 18.

20. In fact, Weiner previously had been one of the pioneers in the field of electronic books, having been the Chief Executive Officer ("CEO") of Microlytics, Inc. and, after Microlytics merged into Selectronics, Inc., the CEO of Selectronics.

21. As CEO of Microlytics and Selectronics, Weiner helped to develop, manufacture, distribute, and sell electronic books on handheld devices, including an electronic Bible, the electronic Physicians' Desk Reference ("PDR") and the electronic Random House Encyclopedia.

22. Thus, Weiner knew that, "entire *printed works* have been made available electronically in what amounts to small, usually hand held computers known as electronic books." Id. at 2:40-43 (emphasis added).

23. With respect to electronic books at the time, Weiner also knew, for example, that "[w]hile electronic books allow incorporation of electronic indices and/or full text searching, [those features] do not enhance printed publications; they are substitutions subject to all limitations of small computers, including poor display quality and costs." Id. at 2:43-47.

24. Thus, the '407 Patent identifies "a need for enhanced books to overcome one or more of these problems." Id. at 3:21-22.

25. Weiner used the term "printed work," in the specification of the '407 Patent to mean "a work of any configuration in which information is presented for direct human perception." Id. at 6:42-43.

26. In the '407 Patent, Weiner used the term "book," to specifically encompass "not only conventional books, but other forms of printed information that could be read directly by users such as maps, newspapers, and other unbound publications that include printed information." The term further included "[f]orms of printing such as Braille embossing." Id. at 1:28-33.

27. As for "enhancements," the '407 Patent speaks broadly of "enhancing material such as additional text, graphics and sounds, the nature of which is limited solely by the ability to store the additional information in digital format …." Exhibit A at 3:24-26.

28. The '407 Patent discloses a way of providing specific enhancements (e.g., dictionaries, thesauri, and language translations) to support any and all printed works that can be held in memory and displayed to a human reader. Id. at. 3:44-53.

29. Upon information and belief, Amazon has manufactured, used, offered for sale, and/or sold products, including but not limited to the Kindle, the Kindle 2, Kindle DX, Kindle 3G, the Kindle with Special Offers, other present and/or future versions of the Kindle, and textual and/or graphic information downloaded from Amazon to all such versions of a Kindle, either directly from Amazon or using devices other than Kindle via Amazon's Kindle Reading Applications (hereinafter collectively referred to as the "Kindle"), in the United States, including in this judicial district.

30. In its User's Guide, Amazon refers to the Kindle as "our portable electronic reading device." Kindle User's Guide, 2nd Ed. ("KUG"), Location 2257. (Note: In lieu of "pages," the KUG uses "Locations.")

31. Amazon's Kindle executives, including but not limited to its CEO Jeff Bezos, have also referred to the Kindle as the "Kindle book."

32. The Kindle is capable of wirelessly downloading into its onboard memory information that Amazon calls "Digital Content," which consists of "digitized electronic content, such as books, newspapers, magazines, journals, blogs, RSS feeds, games and other static and interactive electronic content." KUG, Location 2257-2258.

33. To display its Digital Content, "Kindle uses a high-resolution display technology called electronic paper. It works using ink just like books and newspapers, but it displays the ink particles electronically." KUG, Location 184.

34. The Kindle Home Screen "displays a list of [the user's] Kindle reading materials – books, newspapers, magazine, blogs, PDF files, personal documents, as well as audiobooks. It serves as a personal bookshelf for all of [a user's] reading material, as well as a starting point to access other Kindle features." Id. at 545-546.

35. One such feature, for example, is that "[w]hile reading a book, periodical or personal document, [a reader] can see a brief definition of a word using the Lookup feature. The default dictionary is the *New Oxford American Dictionary* included on [the user's] Kindle, but [a user] can choose a different dictionary as [the] default." Id. at 888-889.

36. The Kindle also allows a user to search Wikipedia or the web "to expand [a] search beyond the dictionary on [the] device." Id. at 899-900 and 1209.

37. Alternatively, a user "can limit a search to only what [the user is] currently reading," and, "can . . . search all the reading material that [the user has] stored on Kindle, including books, newspapers, magazines, and other items" by entering a search term or phrase that in turn causes the Kindle to search "in the body of the text, in the metadata (for example, the title or author), and in your 'My Clippings' file." Id. at 1210.

38. In fact, in the Kindle User's Guide, all of Chapter 4 is devoted to and titled "Searching on Kindle." Id. at 1209 *et seq*.

39. A Kindle user "can also listen to audiobooks … or turn on Text-to-Speech in the reading material." KUG at Location 1153-1154.

40. The Text-to-Speech feature means that the "Kindle can read aloud [a user's] books (where allowed by the rights holder), newspapers, magazines, blogs, and personal documents with the Kindle Experimental application, Text-to-Speech." Id. at 1187 (parenthetical in original).

41. The foregoing features are examples of the features Amazon makes available to users via "software on the Kindle." Id. at 2258-2259.

42. Upon information and belief, the Kindle infringes Claim 24 of the '407 Patent.

43. Claim 24 of the '407 Patent reads on electronic books containing printed information and that include "enhancing information stored in machine readable memory permanently attached to the book."

44. Amazon's infringement of the '407 Patent has injured Plaintiff, and thus, it is entitled to recover damages adequate to compensate for the infringement, which in no event shall be less than a reasonable royalty.

45. In connection with the '965 Patent, Weiner incorporated the '407 Patent into the '965 Patent by reference and mentioned it several times; he was aware of e-ink technology and the fact that e-ink "paper" is initially flexible; and he understood that "such display substrate materials, while flexible *by design*, may be employed in embodiments where the substrate and associated display are maintained in *a rigid condition* . . . ." '965 Patent, column 3, lines 61-65 (emphasis added).

46. Upon information and belief, the Kindle uses e-ink technology.

47. Upon information and belief, the Kindle also infringes Claims 1, 5, 7, and 18 of the '965 Patent.

48. For example, Claims 1, 5, 7, and 18 of the '965 Patent read on an apparatus which receives textual and graphical information through a wireless source and which, using at least two possible colors, displays and updates that information in an electronic version of a book, and does so by using a portable power supply and providing features allowing the user to selectively alter the display of that information.

49. Amazon's infringement of the '965 Patent has injured Plaintiff, and thus, it is entitled to recover damages adequate to compensate for the infringement, which in no event shall be less than a reasonable royalty.

## DEMAND FOR JURY TRIAL

50. Plaintiffs demand a jury trial on all claims and issues so triable.

## PRAYER

WHEREFORE, Plaintiffs respectfully request entry of judgment against Defendant Amazon that:

A. Amazon has infringed one or more claims of the '407 Patent and/or the '965 Patent;

B. Amazon account for and pay to Plaintiff Technology Innovations, LLC all damages caused by the infringement of the '407 Patent and/or the '965 Patent, which in no event can be less than a reasonable royalty;

C. Plaintiff Technology Innovations, LLC be granted pre- and post-judgment interest on the damages caused by Amazon's infringement of the '407 and/or the '965 Patent;

D. Plaintiff be awarded its costs recoverable under the law;

E. Plaintiff be awarded reasonable attorney fees under the law;

F. Plaintiff be granted such other and further relief as the Court may deem just and proper.

Date:  August 8, 2011                              */s/ Richard K. Herrmann*
                                                  Richard K. Herrmann (I.D. #405)
                                                  Mary B. Matterer (I.D. #2696)
                                                  MORRIS JAMES LLP
                                                  500 Delaware Avenue, Suite 1500
                                                  Wilmington, Delaware 19801
                                                  (302) 888-6800
                                                  rherrmann@morrisjames.com

                                                  Edward W. Goldstein
                                                  Holly H. Barnes
                                                  GOLDSTEIN & LIPSKI PLLC
                                                  1177 West Loop South, Suite 400
                                                  Houston, Texas 77027
                                                  (713) 877-1515
                                                  egoldstein@gliplaw.com
                                                  hbarnes@gliplaw.com

                                                  Attorneys for Plaintiff
                                                  TECHNOLOGY INNOVATIONS, LLC