IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TECHNOLOGY INNOVATIONS, LLC ) | |
| ) | |
| ) | |
| Plaintiff, ) | |
| ) | The Honorable Sue L. Robinson |
| -vs.- ) | |
| ) | No. 1:11-cv-00690 (SLR) |
| AMAZON.COM, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

## CLAIM CONSTRUCTION SURREPLY BRIEF OF AMAZON.COM, INC.

Richard Horwitz (#2246)
rhorwitz@potteranderson.com
POTTER ANDERSON & CORROON LLP
1313 North Market St.
Hercules Plaza, 6th Floor
Wilmington, DE 19801
Telephone: (302) 984-6027
Facsimile: (302) 658-1192

Counsel for Defendant
AMAZON.COM, INC.

*Of Counsel*:

Thomas G. Pasternak
tpasternak@steptoe.com
Amanda K. Streff
astreff@steptoe.com
STEPTOE & JOHNSON LLP
115 South LaSalle Street, Suite 3100
Chicago, IL 60603
Telephone: (312) 577-1300
Facsimile: (312) 577-1370

September 10, 2013
1122083 / 37202

## TABLE OF CONTENTS

INTRODUCTION ---------------------------------------------------------------------------------------- 1

ARGUMENT ---------------------------------------------------------------------------------------------- 2

     I.     Flexible Substrate Display ------------------------------------------------------------- 2

     II.    Flexible------------------------------------------------------------------------------------ 3

     III.   Apparatus (in the Preamble) ------------------------------------------------------------ 4

     IV.   Apparatus (in the Body of Claim 1) ----------------------------------------------------- 4

     V.    Permanently Embedded --------------------------------------------------------------------- 6

          A.     Embedded -------------------------------------------------------------------- 6

          B.     Permanently --------------------------------------------------------------- 6

     VI.   Substrate ------------------------------------------------------------------------------------ 9

     VII.  On An Exposed Surface ------------------------------------------------------------------- 10

     VIII. Display Medium --------------------------------------------------------------------------- 10

     IX.   Book (the '407 patent) ----------------------------------------------------------------- 10

CONCLUSION ---------------------------------------------------------------------------------------- 12

# TABLE OF AUTHORITIES

*Cases:* *Page(s):*

*Phillips v. AWH Corp.,*
415 F.3d 1303 (Fed. Cir. 2005) (en banc)------------------------------------------------------------------ 4

*Seattle Box Co., Inc. v. Indus. Crating & Packing, Inc.,*
   731 F.2d 818 (Fed. Cir. 1984)------------------------------------------------------------------------- 7

# INTRODUCTION

The parties present the Court with nine terms, three of which are pivotal to the pending summary judgment motions. TI seems to be retracting some of its arguments regarding these three pivotal terms. First, TI seems to concede that the "flexible substrate display" requires the *entire* display to be flexible—though the display may be "rigidified" by an external frame. (TI Reply Br.[1] at 11.) But this "rigidified" external frame is irrelevant because the claim does not address structures external to the display. Second, TI's current position on "apparatus" forces TI to argue that the term means different things in different parts of the claim. (TI Reply Br. at 1, 5.) This argument not only violates a bedrock rule of claim construction but also contradicts TI's repeated position elsewhere that the term means the same thing throughout the claim. (TI Reply Br. at 3; TI Opening Br.[2] at 8.) Third, TI does not dispute that "permanently" in the term "permanently embedded" is a word of degree. (TI Reply Br. at 6-9.) And yet TI fails to identify any context in the intrinsic evidence for measuring this degree. Though it is the party asserting the claims, TI has been unable to maintain consistent arguments and clear positions on what these terms mean.

---

[1] D.I. 123.

[2] D.I. 102.

## ARGUMENT

### I.    Flexible Substrate Display

| TI's Proposed Construction | Amazon's Proposed Construction |
|---|---|
| A surface that exhibits or presents electronic information, made of a material capable of being bent or flexed, and which, while flexible by design, may be employed in embodiments where the substrate and associated display are maintained in a rigid condition (e.g., a frame-mounted and/or matted configuration). | A flexible device that receives and presents visual information, a separate component part of which is a display medium. |

The dispute here hinges on whether the term "substrate display" refers to the entire display (as Amazon proposes) or merely to one component within it (as TI contends). In other words, what structure does the claim require to be flexible? TI offers remarkably little argument on this point. (TI Reply Br. at 10-11.)

As a threshold matter, TI retreats from the grammatical argument that it highlighted in its opening brief. There, TI argued that "flexible" modifies only "substrate" and not "display" because "[m]odifiers should be placed next to the words they modify." (TI Opening Br. at 20 (case citation omitted).) TI now concedes that "substrate display" should be read as "a phrase" and that "[p]erhaps the exact order of words is unimportant." (TI Reply Br. at 10.)

TI also seems to retreat from its earlier position that "the claim specifically required only that the substrate portion of the display is flexible." (TI Opening Br. at 21.) Now, TI contends only that "the claim does not exclude the possibility that the display as a whole can be rigidified." (TI Reply Br. at 11.) TI quotes the '965 specification's description of embodiments in which the display, "while flexible by design," may be "maintained in a rigid condition (e.g., a frame-mounted and/or matted configuration)." (TI Reply Br. at 10 (quoting '965 Patent at 3:54-

65).) These embodiments do not support TI's position that the term "flexible substrate display" requires flexibility only in one component of the display.

In the frame-mounted and matted embodiments, the rigid frame is not a component of the display; it is an entirely *separate structure that resides outside* the display. This external frame holds the display in a "rigid condition," but cannot change the flexible nature of the display itself. The claim requires a "flexible substrate display" that may be mounted on flexible materials (like clothing) or may be mounted inside a rigid picture-frame. In either case, the claim requires the *display itself* to be flexible. TI offers no argument to the contrary.

## II.   Flexible

| TI's Proposed Construction | Amazon's Proposed Construction |
|---|---|
| Word is part of limitation "flexible sub-strate display" and considered as part of that. | Usable in the same manner as conventional paper, textile, or similar material. |

TI addresses the term "flexible" in three sentences, none of which addresses the merits of Amazon's position. TI does not deny that "flexible" is a term of degree. (TI Reply Br. at 10.) And it offers no rebuttal to Amazon's point that the term "flexible," left undefined, would be meaningless: it would include materials as flexible as steel. (Amazon Resp. Br.[3] at 10-11.) TI contends merely that "flexible" is a "common English word that requires no construction, even if it were a 'word of degree.'" (TI Reply Br. at 10.) TI offers no authority or reasoning to support this perfunctory argument.

Finally, as Amazon noted in its earlier brief, the specification here provides the best source for understanding what the patentee meant by "flexible." (Amazon Resp. Br. at 10.) TI, however, ignores the specification completely. (TI Reply Br. at 10.) TI's approach is indefensi-

---

[3] D.I. 118.

3

ble. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (en banc) (the specification is "always highly relevant to the claim construction analysis. Usually it is dispositive; it is the single best guide to the meaning of a disputed term" (citations and internal quotation marks omitted)).

### III.   Apparatus (in the Preamble)

| TI's Proposed Construction | Amazon's Proposed Construction |
| --- | --- |
| General description that does not define the subject matter of the claim, and so no construction required. | Indefinite |

TI continues to argue that the term "an apparatus . . . comprising" may be written off as inconsequential and non-limiting preamble language. (TI Reply Br. at 2.) TI ignores the rule—which Amazon presented in its earlier brief[4]—that preamble terms are always limiting when they provide the *sole antecedent basis* for terms that appear later in the claim body. TI offers no argument to distinguish this bedrock rule. It simply ignores this rule entirely. (TI Reply Br. at 2-3.)

### IV.   Apparatus (in the Body of Claim 1)

| TI's Proposed Construction | Amazon's Proposed Construction |
| --- | --- |
| Functional components for a display of electronic information. | Indefinite |

TI also fails to rebut Amazon's evidence that the term "apparatus," if construed to mean the same thing in the claim body as in the preamble, leads to an insoluble paradox. TI now suggests that the term "apparatus" means different things in different parts of the same claim:

> TI's position is internally consistent, but recognizes, that as sometimes happens in the claims, terms can be used *differently* even in

---

[4] Amazon's Resp. Br. at 11-12.

4

> the same claim. The terms have to be consistent [sic] used, but that *does not mean that every word has the same meaning* in the context of the particular syntax of a particular limitation.

(TI Reply Br. at 1 (emphases added).) TI again rehashes its "letter/envelope" analogy (TI Reply Br. at 5), which (as Amazon explained in its earlier brief[5]) works only if the word "letter" has *different* meanings throughout the analogy—which cannot occur in a patent claim without violating basic rules of claim construction.

And yet even TI cannot maintain its highly unusual position consistently. To the contrary, TI's "different meanings" argument directly contradicts TI's concession elsewhere that the term "apparatus" in the preamble *"means the same thing* as 'apparatus' in the body of the claim." (TI Reply Br. at 3 (emphasis added); *see also* TI Opening Br. at 9.) But if the term "apparatus" changes meaning, as TI elsewhere suggests, TI leaves the public with no guidance about what those different meanings are much less when those different meanings should be applied, a position utterly incompatible with the public notice function of patent claims.

Finally, even TI's proposed definition cannot eliminate the problems that the patentee drafted into the term "apparatus." TI proposes that the term "apparatus" in the claim body means: "Functional components for a display of electronic information." TI cannot explain how, under this definition, the display can be "located on an exposed surface of the apparatus" as claim 1 requires. It makes no sense to say that the display is located on an exposed surface of itself, just as it makes no sense to say that the substrate cannot be embedded within itself. The claim drafter used the term "apparatus" in a way that is physically impossible under any definition.

---

[5] Amazon Resp. Br. at 13-14.

## V.   Permanently Embedded

| TI's Proposed Construction | Amazon's Proposed Construction |
|---|---|
| Fixed securely, enclosed firmly, or made an integral part within or between one or more layers of the substrate, and not merely attached. | Indefinite |

### A.   Embedded

TI concedes that the specification uses the term "embedded" to mean both "attached to" and "enclosed within," but that the applicant, in the prosecution history, re-defines the term "embedded" to exclude the "attached to" embodiment. (TI Reply Br. at 6-7.) Accordingly, TI implicitly concedes that the intrinsic evidence provides conflicting definitions.

TI does not address this point directly. Instead, TI argues that a specification properly may provide multiple definitions for a term—provided the intrinsic evidence identifies which definition applies in the claim. (TI Reply Br. at 6-7.) This argument misses the point; TI's authority does not support the proposition that a prosecution history may contradict and trump the specification. TI also suggests that the prosecution history is simply disclaiming the "attached to" embodiment, which would be an appropriate thing for it to do. (TI Reply Br. at 3-4 ("That prosecution history mandates that . . . the claim as a whole is limited to [the 'enclosed within' embodiment] because applicant repeatedly distinguished the prior art on the basis that the limitation – with the 'into' language – covered only [the 'enclosed within' embodiment] and excluded [the 'attached to' embodiment]").) But the prosecution history here is not merely disclaiming an embodiment, it is attempting to change the definition of a *term* in a manner that contradicts the specification's use of that term: "Having indicated where the term 'embedded' is employed and how the *term* is clearly distinguished from mere attaching. . . ." (JA 284, TILLC000350.) In other words, the applicant here argues that the *term* "embedded" *excludes* "mere attaching" when

the specification explicitly discloses that this term *includes* "mere attaching." This attempted re-definition gives rise to the indefiniteness problem here.

### B.    Permanently

TI does not dispute that the term "permanently" is a term of degree. Likewise, TI does not argue that the specification neither provides the faintest clue as to what that term means nor suggests why the "apparatus" must be embedded with some degree of "permanence." (The patent is utterly silent on this point.) Instead, TI musters several anomalous arguments.

First, TI argues that Amazon misconstrues the legal test for "words of degree":

> Amazon also argues that the word "permanently" is indefinite because the '965 patent offers no standard for measuring the required degree of "permanence." (DI 118 at 16)
>
> Amazon's argument misstates the law. No authority is cited, and none exists, requiring a standard for measuring words in a claim.

(TI Reply Br. at 7.) This argument is bizarre, because the authority Amazon cited for this point was TI's Opening Claim Construction Brief, which properly cited the *Seattle Box* decision for this very proposition. In the "Permanently Embedded" section of that brief, TI stated:

> [T]he Federal Circuit has explained that *if* the specification provides a basis for how a person of ordinary skill would understand "permanently," then *this word of degree* is not indefinite. *See . . . Seattle Box Co., Inc. v. Indus. Crating & Packing, Inc.*, 731 F.2d 818, 826 (Fed. Cir. 1984) (When a "word of degree" is used, the court *must* determine whether the patent provides "some standard for measuring that degree.")

(TI Opening Br. at 18 (all emphases added).) As TI previously acknowledged, patent drafters may employ "words of degree" *but only* if they also provide "some standard for measuring that degree." TI never identifies where or how the '965 patentee remotely hints at any standard for measuring "permanence" here—which once again leaves the public guessing about the scope of TI's property interest.

7

Second, TI argues that "permanently" is a "common word in the English language" which has a "common dictionary meaning." (TI Reply Br. at 8.) Again, TI misses the point: words of degree *must* be construed *in context*. That context cannot be found in a dictionary.

Third, TI accuses Amazon of trying to re-write TI's proposed claim construction by suggesting that TI defined "permanently embedded" to mean "hidden from view." (TI Reply Br. at 8.) But Amazon merely noted how TI's *arguments* contradicted its own *proposed definition*. In its Opening Claim Construction Brief, TI argued that the '965 patent somehow disclosed sufficient context for construing the term "permanently embedded" by quoting the patent's "hidden from view" language:

> Here, the '965 Patent meets the test [for disclosing a standard that defines "permanently embedded"]. First, the '965 Patent provides a person of ordinary skill would understand pertains to the user. [Sic.] With reference to Figure 2, the '965 Patent states that "the embedded memory device 22 is physically embedded within or between one or more layers of the substrate, possibly during manufacture, *so as to be concealed from visual detection by a viewer of the substrate.*" 3:31-38 (italics added).

(TI Opening Br. at 18.) TI never explains how this "concealed from visual detection" language provides a relevant standard for the term "permanently." Likewise, it identifies no other purported standard in the '965 patent.

Fourth, TI faults Amazon for identifying how TI's definition of "permanently embedded" differs from that of TI's own experts, arguing that "expert testimony is irrelevant." (TI Reply Br. at 9.) But the fact that TI's own experts do not use "permanently embedded" in a manner consistent with TI's definition proves the main point: the word "permanently" in claim 1 has no discernible, much less agreed upon, meaning.

8

## VI.     Substrate

| TI's Proposed Construction | Amazon's Proposed Construction |
| --- | --- |
| A structure which encloses the functional components for a display of electronic information. | A supporting material, to which something is attached or within which something is embedded |

The dispute here is somewhat academic. The term "substrate," by itself, refers to a supporting material. Nothing more. One can attach something to this material or enclosed something inside it. TI purports to construe the term "substrate" but instead construes the entire phrase "substrate into which the apparatus is permanently embedded." In other words, TI defines the term "substrate" by the function that it performs as established by *other* claim language.

TI now suggests that it can agree with the first portion of Amazon's construction ("a supporting material") but it objects to the second part of the definition ("to which something is attached or within which something is embedded"), arguing that the latter language may cause jury confusion. Amazon therefore proposes dropping the second part of its definition and defining "substrate" simply as "a supporting material." Substituting this definition for the term "substrate," the relevant claim language would read:

> a [supporting material] into which the apparatus is permanently embedded.

By contrast, substituting TI's definition for "substrate" into the claim would render this claim language redundant and confusing:

> a [structure which encloses the functional components for a display of electronic information] into which the apparatus is permanently embedded.

Amazon therefore proposes the trimmed down definition: "a supporting material."

9

## VII.   On An Exposed Surface

| TI's Proposed Construction | Amazon's Proposed Construction |
|---|---|
| A surface viewable by a user. | Abutting or in contact with, not embedded within, a surface |

In view of TI's arguments, Amazon proposes that the parties conflate their definitions as follows: "abutting or in contact with a viewable surface." This definition incorporates TI's proposal that "exposed" means viewable and it incorporates Amazon's proposal that "on" means "abutting or in contact with."

## VIII.   Display Medium

The parties now agree on this definition: "A component part of a flexible substrate display, capable of selectively displaying one of at least two possible colors." (*See* TI Reply Br. at 12.)

## IX.   Book (the '407 patent)

| TI's Proposed Construction | Amazon's Proposed Construction |
|---|---|
| not only conventional books, but other forms of printed information that can be read directly by users. | Paper-based media |

TI persists in arguing that the term "book" in the '407 patent includes "electronic books"[6] as well as conventional printed books. (TI Reply Br. at 13 ("Amazon's 'paper-base media' excludes electronic books. The definition of 'book' in the '407 Patent does not").) This argument is not simply unsupported. It is egregious.

---

[6] It should be noted that a Kindle is not an electronic book. It is a device used to read electronic books, and more properly called an electronic book reader or e-reader.

First, TI stakes its position on one quote from the '407 specification. (TI Reply Br. at 12.) This passage refers only to *printed* materials and does not mention or in any way suggest "electronic books":

> As used in this application, we intend that the term book includes not only conventional books but other forms of *printed* information that could be *read directly* by users such as maps, newspapers, and other *unbound publications* that include *printed information.* Forms of *printing* such as Braille embossing are also covered.

(JA 448, '407 Patent at 1:28-33 (emphases added).) TI does not even attempt to explain how this excerpt conceivably could support its position. The patentee here merely states that the term "book" incudes other *printed* materials as well as "conventional books." This language in no way suggests that the term book includes *non-printed* materials, such as digital files. TI cannot in good faith stake its claim construction position on this passage.

Even more inexcusably, TI ignores specification language—quoted in Amazon's earlier brief—that expressly distinguishes the claimed "book" (which contains "printed information") from the electronic device attached to the book (which provides "enhancing information" in a "non-print format, preferably a compressed digital format"):

> The present invention relates generally to *printed information* such as that included in *books* and other printed publications. More particularly, the present invention relates to providing *enhancing information* in a *non-printed format*, preferably a compressed digital format.

(JA 448, '407 Patent at 1:9-13.) As Amazon noted in its earlier brief, claim 24 of the '407 patent claims a "book" (containing printed information) with an attached digital device (providing "enhancing information" in a "non-printed format"). (Amazon Resp. Br. at 21-22.) TI offers no remotely plausible argument that the term "book" in claim 24 includes "electronic books." In asserting this position, TI crosses the line between zealous advocacy and bad faith litigation—which is the subject of the pending sanctions motion.

11

## CONCLUSION

For the reasons provided in this brief and in Amazon's Initial Claim Construction Brief,

Amazon respectfully requests that the Court adopt its proposed constructions.

Respectfully submitted,


*/s/ Richard L. Horwitz*
Richard Horwitz (#2246)
rhorwitz@potteranderson.com
POTTER ANDERSON & CORROON LLP
1313 North Market St.
Hercules Plaza, 6th Floor
Wilmington, DE 19801
Telephone:  (302) 984-6027
Facsimile:  (302) 658-1192

Counsel for Defendant
AMAZON.COM, INC.

*Of Counsel*:

Thomas G. Pasternak
tpasternak@steptoe.com
Amanda K. Streff
astreff@steptoe.com
STEPTOE & JOHNSON LLP
115 South LaSalle Street, Suite 3100
Chicago, IL 60603
Telephone:  (312) 577-1300
Facsimile:  (312) 577-1370


September 10, 2013
1122083 / 37202

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Richard L. Horwitz, hereby certify that on September 10, 2013, the attached document

was electronically filed with the Clerk of the Court using CM/ECF which will send notification

to the registered attorney(s) of record that the document has been filed and is available for view-

ing and downloading.

I further certify that on September 10, 2013, the attached document was Electronically

Mailed to the following person(s):

George Pazuniak
Pazuniak Law Office LLC
1201 North Orange Street
7th Floor, Suite 7114
Wilmington, DE  19801-1186
gp@del-iplaw.com

Nelson Elliott Brestoff
Nelson E. Brestoff, PLC
26340 Ruether Avenue
Santa Clarita, CA  91350
nickbrestoff@yahoo.com

Daniel Cotman
Cotman IP Law Group, PLC
117 East Colorado Blvd.
Suite 460
Pasadena, CA  91105-1938
docketing@cotmanip.com

Robert J. Yorio
Carr & Ferrell LLP
120 Constitution Drive
Menlo Park, CA 94025
yorio@carrferrell.com

By:   */s/ Richard L. Horwitz*
Richard L. Horwitz
David E. Moore
Bindu A. Palapura
POTTER ANDERSON & CORROON LLP
Tel:  (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com
bpalapura@potteranderson.com

1024339 / 37202