# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TECHNOLOGY INNOVATIONS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 11-690-SLR |
| | ) |
| AMAZON.COM, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

George Pazuniak, Esquire of O'Kelly Ernst & Bielli, LLC, Wilmington, Delaware. Counsel for Plaintiff. Of Counsel: Nelson E. Brestoff, Esquire of Nelson E. Brestoff, PLC. Daniel C. Cotman, Esquire of Cotman IP Law Group, PLC. Robert J. Yorio, Esquire of Carr & Ferrell LLP.

Richard L. Horwitz, Esquire, David E. Moore, Esquire, and Bindu A. Palapura, Esquire of Potter Anderson & Corroon LLP, Wilmington, Delaware. Counsel for Defendant. Of Counsel: Thomas G. Pasternak, Esquire and Amanda K. Streff, Esquire of Steptoe & Johnson, LLP.

## MEMORANDUM OPINION

Dated: March 31, 2014
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

On August 8, 2011, plaintiff Technology Innovations, LLC ("TI") filed suit in this district against defendant Amazon.com, Inc. ("Amazon") alleging infringement of two patents: U.S. Patent Nos. 5,517,407 ("the '407 patent") and 7,429,965 ("the '965 patent"). (D.I. 1) Amazon responded to TI's original complaint with both a motion to dismiss and a motion for sanctions under Federal Rule of Civil Procedure 11 with respect to the '407 patent. (D.I. 7; D.I. 14) The court denied Amazon's motions on April 25, 2012. (D.I. 39)[1] Subsequently, Amazon answered and filed its affirmative defenses and counterclaims, including in its prayer for relief a request for costs and attorney fees. (D.I. 40 at 18) After being granted leave to amend its complaint (D.I. 79), TI filed an amended complaint removing all allegations of infringement with respect to the '407 patent. (D.I. 80)

TI is a limited liability company organized and existing under the laws of the State of New York, with its principal place of business in Estero, Florida. (D.I. 80 at ¶¶ 1-2) TI owns the '965 patent. (*Id.* at ¶ 9) Amazon is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Seattle, Washington. (*Id.* at ¶ 3) It makes, manufactures, and/or sells the accused products. (*Id.* at ¶ 19)

Presently before the court are Amazon's motions for summary judgment of invalidity and non-infringement of the '965 patent (D.I. 107; D.I. 111), and TI's cross-

---

[1]The procedural history with regard to sanctions will be discussed further below.

1

motion for partial summary judgment of no invalidity of the '965 patent. (D.I. 115)

Amazon also filed a motion to exclude the testimony and evidence of Dr. Conte and Mr.

McCourt. (D.I. 104) The court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and

1338(a).

## II. STANDARDS OF REVIEW

### A. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of

demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus.*

*Co. v. Zenith Radio Corp.*, 415 U.S. 574, 586 n.10 (1986). A party asserting that a fact

cannot be—or, alternatively, is—genuinely disputed must support the assertion either

by citing to "particular parts of materials in the record, including depositions, documents,

electronically stored information, affidavits or declarations, stipulations (including those

made for the purposes of the motions only), admissions, interrogatory answers, or other

materials," or by "showing that the materials cited do not establish the absence or

presence of a genuine dispute, or that an adverse party cannot produce admissible

evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has

carried its burden, the nonmovant must then "come forward with specific facts showing

that there is a genuine issue for trial." *Matsushita*, 415 U.S. at 587 (internal quotation

marks omitted). The court will "draw all reasonable inferences in favor of the

nonmoving party, and it may not make credibility determinations or weigh the evidence."

2

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586-87; *see also Podohnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). Although the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," a factual dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 411 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 411 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

### B. Claim Construction

Claim construction is a matter of law. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1330 (Fed. Cir. 2005) (en banc). Claim construction focuses on intrinsic evidence - the claims, specification and prosecution history - because intrinsic evidence is "the most significant source of the legally operative meaning of disputed claim language." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996); *Markman v.*

3

*Westview Instruments, Inc.,* 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), *aff'd,* 517 U.S. 370 (1996). Claims must be interpreted from the perspective of one of ordinary skill in the relevant art at the time of the invention. *Phillips,* 415 F.3d at 1313.

Claim construction starts with the claims, *id.* at 1312, and remains centered on the words of the claims throughout. *Interactive Gift Express, Inc. v. Compuserve, Inc.,* 256 F.3d 1323, 1331 (Fed. Cir. 2001). In the absence of an express intent to impart different meaning to claim terms, the terms are presumed to have their ordinary meaning. *Id.* Claims, however, must be read in view of the specification and prosecution history. Indeed, the specification is often "the single best guide to the meaning of a disputed term." *Phillips,* 415 F.3d at 1315.

## C. Invalidity

The definiteness requirement is rooted in § 112, ¶ 2, which provides that "the specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." "A determination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims." *Personalized Media Comm., LLC v. Int'l Trade Com'n,* 161 F.3d 696, 705 (Fed. Cir. 1998).

> Determining whether a claim is definite requires an analysis of whether one skilled in the art would understand the bounds of the claim when read in light of the specification . . . If the claims read in light of the specification reasonably apprise those skilled in the art of the scope of the invention, § 112 demands no more.

*Id.* (citing *Miles Lab., Inc. v. Shandon, Inc.,* 997 F.2d 870, 875 (Fed. Cir. 1993)). A claim that is "insolubly ambiguous" is indefinite as a matter of law. *Halliburton Energy*

4

*Servs. v. M-I LLC*, 514 F.3d 1244, 1249 (Fed. Cir. 2008). "Only claims 'not amenable to construction' or 'insolubly ambiguous' are indefinite." *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005).

## III. DISCUSSION

### A. The '965 Patent

The '965 patent, entitled "Apparatus for the Display of Embedded Information,"

was filed on May 18, 2001 and issued on September 30, 2008. It claims priority to

provisional application no. 60/205,451, filed on May 19, 2000. The '965 patent is

directed to "an apparatus for embedding digital information within a document substrate

and displaying that information via the substrate." ('965 patent, col. 1:27-29) TI alleges

that Amazon's Kindle products infringe independent claim 1 and dependent claims 3, 5,

7 and 18 of the '965 patent. Claim 1 is reproduced below.

> 1. An apparatus for the electronic display of information, comprising:
> a substrate into which the apparatus is permanently embedded;
> a digital recording medium associated therewith, where information is stored in a digital recording medium; and
> an updateable, flexible substrate display located on an exposed surface of the apparatus,
> wherein said substrate display includes a display medium capable of selectively displaying one of at least two possible colors at a plurality of pixel locations thereon;
> where the flexible substrate display changes state in response to a signal generated from information stored in the digital recording medium.

(*Id.* at col. 11:44-58)

5

## 1. The term "apparatus²" and invalidity of the '965 patent

Claim 1, which is incorporated into all the asserted claims, recites: "An **apparatus** for the electronic display of information, comprising: a substrate into which the **apparatus** is permanently embedded." (*Id.* at col. 11:44-47) (emphasis added) Amazon argues that the asserted claims are indefinite under 35 U.S.C. § 112, ¶ 2 because (1) they do not identify what the applicant regards as his invention, and (2) they expressly require two conditions that are mutually exclusive – an "apparatus" that includes a "substrate" as one of its parts and, separately, that the apparatus be "permanently embedded" in the substrate that is part of the apparatus – a logical and physical impossibility. (D.I. 108) TI contends that the two conditions are not mutually exclusive. (*See* D.I. 102 at 15) It proposes that "apparatus" as found in the preamble does not require construction as it is a general description that does not define the subject matter of the claim, and "apparatus" as found in the body of the claim be construed as "functional components for a display of electronic information." (D.I. 141)

### a. "Apparatus" in the preamble

Amazon correctly argues that the term "an apparatus" in the preamble is limiting because it provides the sole antecedent basis for the limitation "the apparatus" that appears in the body of the claim. *See C.W. Zumbiel Co., v. Kappos*, 702 F.3d 1371, 1385 (Fed. Cir. 2012) ("[T]he preamble constitutes a limitation when the claims(s) depend on it for antecedent basis . . . ."). TI in contrast argues that the term

---

²The construction of which was disputed in the parties' claim construction briefing and is, in part, the subject of Amazon's motion for summary judgment of invalidity (D.I. 107), and TI's cross-motion for summary judgment of no invalidity. (D.I. 115)

6

"apparatus" found in the preamble is not a limitation because it is not necessary to complete the structural limitations that follow in the body of the claim and merely identifies the general nature of the invention as being an apparatus claim, rather than a method claim. (D.I. 102 at 5-6) It relies on *Dawson v. Dawson* for the proposition that "a preamble is not limiting 'when the claim body describes a structurally complete invention such that deletion of the preamble phrase does not affect the structure or steps of the claimed invention.'" 710 F.3d 1347, 1360 (Fed. Cir. 2013) (quoting *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 809 (Fed. Cir. 2002)). Notably, if the preamble term "apparatus" were not a limitation, however, then that term, as it appears later in the claim body, would have no antecedent basis and, therefore, would be indefinite for that reason alone.[3]

### b. "Apparatus" in the body of claim 1

In support of its motion for summary judgment of invalidity, Amazon argues that the claim is indefinite because it does not identify what "the applicant regards as his invention," the first requirement for definiteness.[4] (D.I. 108 at 9; *see Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1348 (Fed. Cir. 2002)). In *Allen*, the specification

---

[3]TI argues that the relationship of the preamble and the body in this context is informed by *Saffran v. Johnson & Johnson*, 712 F.3d 549 (Fed. Cir. 2013), because *Saffran* indicates that there is no indefiniteness or construction problem with having the term "apparatus" in the preamble and in the claims. (D.I. 116 at 13) TI, therefore, asserts that the proper construction of "apparatus" is that the term encompasses the "set of limitations in the body of the claim." (*Id.*) TI again misses the point; the claim is not indefinite simply because the term "apparatus" appears both in the preamble and the claim body, but that it imposes a condition that contradicts another condition in the claim as Amazon correctly argues. (*See* D.I. 125 at 3)

[4]The claim must also do so with "sufficient particularity and distinctness." *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1348 (Fed. Cir. 2002).

7

described the invention as a riding trowel with a gear box that pivoted in a direction parallel to the biaxial plane and that could not pivot in the perpendicular plane; the claim as drafted required the gear box to pivot in the perpendicular direction. 299 F.3d at 1349. The Federal Circuit determined that the claim was indefinite, stating that "it is apparent from a simple comparison of the claims with the specification that the inventor did not regard a trowel in which the second gear box pivoted only in a plane perpendicular to the biaxial plane to be his invention." *Id.* Notably, the Federal Circuit advised that, "[i]t is not our function to rewrite claims to preserve their validity. . . . We are simply tasked with determining whether the claims 'particularly point[] out and distinctly claim[]' what the inventor regards as his invention." *Id.* (quoting 35 U.S.C. § 112, ¶ 2) (citations omitted).

In the present case, the specification and the prosecution history of the '965 patent inform the court as to what the inventor regarded as his invention. During prosecution of the patent, the applicant received a rejection under § 112 because "permanently embedded" was not described in the specification in such a way as to reasonably convey to one skilled in the art that the inventor had possession of the claimed invention. (D.I. 103, ex. 4 at JA 271) The applicant responded that the limitation was fully disclosed:

> In particular, it will be noted that the alternatives depicted in Figures 1 - 3 are either (i) attaching to a substrate surface or (ii) embedding within a substrate. With reference to Figure 2, in particular, **the location of a memory device is characterized as "embedded** within or between one or more layers of the substrate, possibly during its manufacture . . . ." Several lines later, the statement that "other components associated with the memory may also be

8

embedded" **clearly indicates that memory and associated display components, etc. may be embedded within a substrate** – particularly with respect to the applications for the invention referred to therein as being "described below.". . . Again referring to Figure 2, **it is clear that the disclosure contemplated the "embedding" of the memory and associated components** in the substrate as described relative to the apparatus of claim 1.

(*Id.* at JA 283) (emphasis added)[5] As in *Allen*, it is clear that the patentee intended a different component – a memory – to be embedded. The asserted claims, however, claim an apparatus embedded in a substrate, the substrate being defined as a part of the apparatus itself. Claim 1, therefore, is invalid as indefinite under § 112, ¶ 2 for failing to inform the public as to what the inventor regarded as his invention.[6]

Amazon also argues that the claims cannot possibly define the metes and bounds of the invention because they contain an inherent logical contradiction that renders them "insolubly ambiguous." (D.I. 108 at 11; *see Virtual Solutions, LLC v. Microsoft Corp.*, 925 F. Supp. 2d 550, 569 (S.D.N.Y. 2013) (finding a claim indefinite because "[it] requires that two apparently contradictory statements hold true: 'position information' must be simultaneously part of, and used separately from, the 'physical characteristic signal'. . . ."). The decision from this district, *M2M Solutions, LLC v.*

---

[5](*See also* '965 patent, col. 3:32-7; 3:66-4:1)

[6]TI argues that this case is distinguishable from *Allen* because TI is not suggesting that the court replace any claim term with a different term, but rather is applying the plainly intended and proper construction to the claims consistent with the specification and prosecution history. (D.I. 116 at 14-15) TI misses the point of the Federal Circuit's admonition in *Allen,* that it is not the function of the court to correct the patentee's mistakes in not drafting a claim in the way he had intended. A finding that the claims are definite in this case would be equivalent to what the Federal Circuit advised against in *Allen.*

9

*Sierra Wireless America, Inc.* further informs the court. Civ. No. 12-30, 2013 WL 5981336,*6 (D. Del. Nov. 12, 2013).[7]  In *M2M*, the claim required a "monitoring device" that operated remotely from a second device and a "monitoring device" that operated locally and was attached to the second device. *Id.* at *6-7.  Patentee's use of the word "the" invoked the antecedent basis rule, meaning that the claim necessarily referred to the same "monitoring device" in both instances. *Id.* at *6.  The court determined that the term was "not amenable to construction," stating that "[t]he monitoring device . . . cannot be both local and remote at the same time . . . ." *Id.* at *7; *see Datamize*, 417 F.3d at 1347.

TI argues that "a substrate into which the apparatus is permanently embedded" simply means that the apparatus is enclosed by or embedded into a substrate which is part of the overall apparatus, and analogizes the present term with use of the word "letter," which will often include the envelope in which the actual letter is embedded or enveloped. (D.I. 116 at 11-12)  The term "apparatus," however, does not change meaning within the context of the claim.[8]  The court agrees with Amazon that, if one uses the term "letter" to refer to the combination—and applies that term

---

[7]Decided after this motion was briefed and submitted by Amazon as subsequent authority in support of its position. (D.I. 145)

[8]TI initially stated that "[t]he term 'the apparatus' admittedly refers back to the 'apparatus for the electronic display of information' in the preamble." (D.I. 102 at 13)  In its claim construction reply brief, TI changed its position, arguing that "[its] position is internally consistent, but recognizes, that as sometimes happens in the claims, terms can be used differently even in the same claim. The terms have to be consistent[ly] used, but that does not mean that every word has the same meaning in the context of the particular syntax of a particular limitation." (D.I. 123 at 1)  Aside from being inconsistent with the law, Amazon correctly notes that such inconsistency is incompatible with the public notice function.

10

consistently—one can no longer say that the "letter" (i.e., the combination) is enclosed within the envelope. To do so would require something to be enclosed within itself—a physical impossibility. (See D.I. 125 at 2)[9] The court concludes that claim 1[10] is further "not amenable to construction" and, therefore, is invalid.[11] Amazon's motion for summary judgment of invalidity of the '965 patent is granted. TI's cross-motion for partial summary judgment of no invalidity is denied.[12]

## B. The '407 Patent

The '407 patent, entitled "Device for including enhancing information with printed information and method for electronic searching thereof," was filed June 30, 1994 and issued May 14, 1996. The '407 patent claims an invention for electronically enhancing printed information such as books and other printed publications. In its original complaint, TI alleged that Amazon's Kindle product infringed claim 24 of the '407

---

[9]Additionally, TI's argument fails to take into account the term "comprising," a patent law term of art meaning "including but not limited to." CIAS, Inc. v. Alliance Gaming Corp., 504 F.3d 1356, 1360 (Fed. Cir. 2007). In the present case, "apparatus" as used in the preamble must include: (1) a substrate into which it is permanently embedded; (2) a digital recording medium; and (3) a flexible substrate display.

[10]Because the court has found independent claim 1 invalid for indefinitess, the claims that depend from it are invalid as well.

[11]Amazon also alleges that the limitation "permanently embedded" is indefinite and that the claims fail to satisfy the utility requirement of § 101 and the enablement requirement of § 112. In light of the holding of invalidity on other grounds under § 112, ¶ 2, the court addresses neither of these arguments, nor the anticipation arguments proffered by each side.

[12]TI argues that the claim limitation with the word "apparatus" was the specific subject of multiple Patent Office actions and applicant responses, resulting in the Patent Office highlighting the word "apparatus" in allowing the claims. (DI 116 at 4-7) This argument is unavailing given the above analysis.

patent. (D.I. 1 at ¶ 42)

## 1. Relevant background

On April 25, 2012, the court denied Amazon's motions to dismiss and for Rule 11 Sanctions,[13] with the caveat that the court would consider a "renewed motion if it is later determined, after discovery and a full claim construction record, that [TI's] assertion of the '407 patent against [Amazon's] products was so lacking in merit that the imposition of sanctions is warranted." (D.I. 39)[14] Subsequently, Amazon answered and filed its affirmative defenses and counterclaims, including in its prayer for relief a request for costs and attorney fees. (D.I. 40 at 18) TI answered the counterclaims and filed a motion to amend its complaint. (D.I. 43; D.I. 44)

The court granted TI's motion to amend on March 27, 2013 (D.I. 79) and, on that

---

[13] This motion was filed based on the parties' litigation history with respect to the '407 patent. In December 2010, TI asserted the '407 patent against Amazon in a Texas lawsuit. Amazon's counsel contacted TI and suggested that TI drop the case since there was no legitimate way to read the patent on any Amazon product. (D.I. 130, ex. A) On August 8, 2011, TI dismissed Amazon from the Texas lawsuit under Fed. R. Civ. P. 41(a)(1)(A)(i) without having ever served the complaint, and filed (via new counsel) the complaint in the present lawsuit on the same day. (D.I. 135 at 1-2) TI, through declarations of counsel, seeks to correct the statement made in this court's order (D.I. 110) stating that, "[a]ccording to Amazon, the parties had previously resolved, through conversations between counsel, that TI would not pursue the '407 patent against Amazon in the Southern District of Texas due to the high unlikelihood of infringement." (citing D.I. 8, ex. B; D.I. 14; D.I. 15 at 1-2) (D.I. 129 at 2; see D.I. 130 at TIA99-100, 106-07, 110-11) TI asserts that the case was not dismissed based on any belief by TI or its counsel that the Kindle did not infringe claim 24 of the '407 patent, but instead was dismissed in favor of the present case. (D.I. 129 at 4)

[14]The court noted at this time that "it appear[ed] from a plain reading of the '407 patent that a memory device 'attached to a book' or 'printed material' is claimed," but also stated that "[a]ny characterizations of the '407 patent discussed [in the court's order] shall not be binding vis-a-vis the claim construction phase of this case." (D.I. 39 at 5 n.3)

same day, TI filed its amended complaint removing all allegations of infringement with respect to the '407 patent. (D.I. 80) TI further provided a statement of non-liability for infringement of the '407 patent with respect to Amazon. (D.I. 82) In granting TI's motion to amend, this court indicated that Amazon "shall file an answer to the amended complaint . . . through which it may seek an award of attorney fees pursuant to 35 U.S.C. § 285. If [Amazon] chooses to dismiss its counterclaims, it may nonetheless raise them in support of its fees motion." (D.I. 79)

In its answer to the amended complaint, among several affirmative defenses, Amazon included three counterclaims, wherein counterclaim III sought sanctions, including attorney fees, pursuant to 35 U.S.C. § 285 for the frivolous assertion of the '407 patent. (D.I. 83 at 13-17) On April 18, 2013, TI filed a motion to dismiss Amazon's counterclaim III for sanctions on the grounds that it failed to state a cause of action. (D.I. 88) The court granted the motion on August 15, 2013, but recognizing the motivations behind Amazon's counterclaim, determined that there was a basis for considering Rule 11 sanctions for attorney fees against TI for its assertion of the '407 patent. (D.I. 110 at 8-9) Specifically, the court noted that, "TI continued to assert the '407 patent at least until May 30, 2012 when it motioned to amend its complaint to completely remove the '407 patent from the suit." (*Id.* at 9) "Defendant was required to answer the original complaint, file counterclaims, and cooperate with discovery requests related to the '407 patent from August 8, 2011 at least until that date." (*Id.*)

The court ordered that TI show cause why its assertion of the '407 patent in its original complaint was proper under the requirements of Rule 11(b). (*Id.*) TI filed a response to this order on September 12, 2013 asserting that it conducted an objectively

13

reasonable pre-suit infringement investigation and, therefore, complied fully with Rule 11. (D.I. 129) Amazon responded on September 30, 2013 and TI replied on October 10, 2013. (D.I. 135; D.I. 139) In its brief, Amazon urges this court to draw a much-needed line as TI's claim epitomizes the sort of abusive litigation that has clogged the courts and has caused defense costs to skyrocket. (D.I. 135 at 1)[15]

## 2. Standard of review

Rule 11 of the Federal Rules of Civil Procedure allows a court to sanction a party or attorneys under limited circumstances. A court can award sanctions if a party or attorney has presented a motion for an "improper purpose," the claims or defenses put forth in a motion are frivolous, the claims in a motion are not likely to be supported by the evidence after investigation, or a party wrongfully denies a factual allegation. *Brown v. Interbay Funding*, LLC, Civ. No. 04-617, 2004 WL 2579596, at *2 (D. Del. Nov. 8, 2004); see Fed. R. Civ. P. Rule 11(b).

In a patent case, the law of the regional circuit applies to the imposition of Rule 11 sanctions. *See Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1406–07 (Fed. Cir. 2004). In the Third Circuit, conduct violates Rule 11 if it is not "objectively reasonable under the circumstances." *Ario v. Underwriting Members of*

---

[15]In support of its position, Amazon cites to an article written by Chief Judge Rader that discusses the authority of judges to curtail abusive litigation practices by shifting the cost burden of litigation abuse using § 285 of the Patent Act and Fed. R. Civ. P. 11. In further discussing fee-shifting under § 285, the article suggests that an "indication[] of potential bullying [to take improper advantage of a defendant] include[s] litigants who . . . distort a patent claim far beyond its plain meaning and precedent for the apparent purpose of raising the legal costs of the defense." (D.I. 136, ex. I, Randall R. Rader, Colleen V. Chien and David Hricik, *Make Patent Trolls Pay in Court*, N.Y. TIMES: The Opinion Pages, June 4, 2013, at 2-3.

*Syndicate 53 at Lloyds for the 1998 Year of Account*, 618 F.3d 277, 297 (3d Cir. 2010). A reasonable pre-suit investigation requires that counsel compare the accused product to the asserted claims, and "perform an objective evaluation of the claim terms when reading those terms on the accused device." *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1329 (Fed. Cir. 2011) (holding that the district court's findings were not clearly erroneous in finding a complaint objectively unreasonable where defendant's proposed claim construction contradicted the specification's express definition of the invention).

### 3. Parties' contentions

#### a. TI

TI alleges that it conducted an objectively reasonable pre-suit investigation, including construing the claims, and after doing so, asserted only one claim of the '407 patent against one product in compliance with Rule 11. (D.I. 129 at 1; D.I. 130 at TIA 107 at ¶ 3) It further alleges that Amazon's motion must be rejected because Amazon asserts a plainly erroneous claim construction.[16] (D.I. 129 at 8) In alleging infringement, TI's complaint quoted from the specification of the '407 patent,[17] including the patentee's definition of "book," to support the infringement allegation. (D.I. 1 at ¶

---

[16]TI argues that Amazon's Rule 11 motion is based on an unduly and irresponsibly limited construction of the claim term "book," and adding words "non-digital media" to the claims. (D.I. 129 at 2) Amazon no longer asserts this construction for the limitation "book" but instead argues that the limitation be construed as "paper-based media." (D.I. 85)

[17]Declaration filed by John T. Polasek, who represented TI in the Texas case. (D.I. 130 at TIA 106)

15

26)[18] TI further asserts that claim 24 was compared to the Kindle by counsel and a technical expert, and a claim chart was prepared showing a direct correspondence between the claim limitations and the accused instrumentality. (D.I. 129 at 1)

To show that it conducted a reasonable pre-suit investigation, TI provides a time line of events for the court. On April 21, 2011, TI retained attorney Nelson E. Brestoff to take over the defense of TI's patents. (D.I. 129 at 4; D.I. 130 at TIA 100 at ¶ 3) Brestoff then engaged Edward W. Goldstein, a patent litigation attorney with over 40 years of experience. (D.I. 130 at TIA 100 at ¶ 4) Just prior to the filing of the Delaware complaint, Mr. Goldstein arranged for Delaware local counsel to be Richard Herrman of Morris James LLP. (*Id.* at ¶ 11) TI asserts that Mr. Brestoff and Mr. Goldstein conducted a detailed and comprehensive pre-suit investigation approximately three months before the Delaware complaint was filed. (D.I. 129 at 4) The investigation also included the inventor of the '407 patent, Michael Weiner, and Warren Woodford, a technology consultant to TI with "close to 45 years of experience as a device and software manager, designer, developer, architect, engineer, and consultant." (D.I. 130 at TIA 113 at ¶¶ 3-4)

---

[18]Paragraph 26 of the complaint reads:

> In the '407 Patent, Weiner used the term "book" to specifically encompass "not only conventional books, but other forms of printed information that could be read directly by users such as maps, newspapers, and other unbound publications that include printed information." The term further included "[f]orms of printing such as Braille embossing." *Id.* at 1:28-33.

(D.I. 1 at ¶ 26)

16

According to TI, it is evident from the complaint that TI carefully reviewed and

interpreted claim 24, following a review of the '407 patent and the prosecution history,

as the complaint shows the key terms of the claim and bases for the constructions as

indicated below:

> 25. Weiner used the term "printed work," in the specification
> of the '407 Patent to mean "a work of any configuration in
> which information is presented for direct human
> perception." *Id.* at 6:42-43.
>
> 26. In the '407 Patent, Weiner used the term "book," to specifically
> encompass "not only conventional books, but other forms of printed
> information that could be read directly by users such as maps,
> newspapers, and other unbound publications that include printed
> information." The term further included "[f]orms of printing such as Braille
> embossing." *Id.* at 1:28-33.
>
> 27. As for "enhancements," the '407 Patent speaks broadly
> of "enhancing material such as additional text, graphics and
> sounds, the nature of which is limited solely by the ability to
> store the additional information in digital format …." Exhibit
> A at 3:24-26.
>
> 28. The '407 Patent discloses a way of providing specific
> enhancements (e.g., dictionaries, thesauri, and language
> translations) to support any and all printed works that can be
> held in memory and displayed to a human reader. *Id.* at.
> 3:44-53.

(D.I. 1 at ¶¶ 25-28) TI then detailed why the Kindle infringed claim 24 of the '407 patent

in more detail than normally found under "Form 18" practice. (*Id.* at ¶¶ 29-44) The

assertion of infringement was also supported by a claim chart created by Mr. Woodford,

which was prepared by July 15, 2011 when it was sent to TI's counsel and which,

according to TI, demonstrates that applying the well-founded interpretation of the claims

as detailed in the complaint, the Kindle infringed claim 24 of the '407 patent. (D.I. 130

TIA 114 at ¶¶ 9-10, TIA 119-123)

17

### b. Amazon

Amazon argues that TI has failed to show cause why it did not violate Rule 11(b) by asserting its '407 patent infringement claim, and asks this court to enter a sanctions order against TI in an amount equal to Amazon's costs and reasonable attorney fees relating to this claim. (D.I. 135 at 10) In support of its position, Amazon argues that TI's position is objectively baseless because: (1) the specification states that digital information is "non-printed";[19] and (2) the specification disclaims "electronic books."[20] (D.I. 135 at 3-4; D.I. 118 at 22-23)

Amazon further argues that TI's pre-filing investigation cannot legitimize its objectively baseless claim construction. (D.I. 135 at 7) Specifically, (1) filing declarations from lawyers and consultants who signed off on the infringement claim cannot establish that TI's construction was grounded in an objectively reasonable analysis; (2) TI cannot offer these declarations as evidence that it acted in good faith because Rule 11 does not require bad faith;[21] and (3) neither TI nor its declarants speaks to what Amazon considers the core flaw in TI's infringement case – how a Kindle can be a "book" with "printed pages" when the patent describes digital information as "non-printed" and disavows electronic books. (D.I. 135 at 7) Amazon asserts that TI had numerous warnings that it could be sanctioned, yet withdrew the

[19]'407 patent at col. 1:9-13.

[20]*Id.* at col. 2:43-47.

[21]Amazon suggests that TI's willingness to elevate these declarations over a plain reading of the intrinsic evidence suggests that TI asserted the '407 patent in bad faith. *See Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1377 (Fed. Cir. 2012) (Reyna, J., concurring), *cert. denied*, 134 S. Ct. 94 (U.S. 2013).

18

'407 patent in April 2013, more than two years after first asserting it.[22]

### 4. The limitation "book"

To create a "full claim construction record" for its sanction motion, Amazon

identified the term "book" from the '407 patent as a disputed limitation to be construed

at the *Markman* hearing. (D.I. 85; D.I. 118 at 21) Amazon proposed the limitation be

construed as "paper-based media," while TI proposed that it means, "not only

conventional books, but other forms of printed information that can be read directly by

users." (D.I. 85) The sole claim asserted against Amazon's Kindle[23] in the original

complaint is reproduced below. Claim 24 recites:

> A book with integral machine readable memory accessible to
> a heterogeneous plurality of computers by way of a standard
> interface comprising:
> a plurality of pages of printed information;
> enhancing information stored in machine readable memory
> permanently attached to the book;
> a connector attached to the book for connecting the machine
> readable memory and external computing device; and
> machine operating instructions stored in the machine
> readable memory for controlling the operation of a
> computing machine attached to the connector.

('407 patent, col. 12:27-38) Figure 1 is a preferred embodiment illustrating the

perspective view of an exemplary device in accordance with the '407 patent. (*Id.* at col.

---

[22]The amended complaint was filed on March 27, 2013. (D.I. 80) The statement
of non-liability was filed on April 2, 2013. (D.I. 82)

[23] Amazon notes that a Kindle is not an electronic book. It is a device used to
read electronic books, and more properly called an electronic book reader or e-reader.
(D.I. 126 at 10 n.6)

6:25-30)[24]



FIG-1

Because the patent expressly indicates that the limitation "book" be defined to

include "not only conventional books, but other forms of printed information that could

---

[24] The description of figure 1 explains that:

> FIG. 1 is a perspective view of an exemplary device in accordance with the concept of the present invention, generally indicated by the numeral 10, including **a printed work 11, such as a book 12 having binding 14, a front cover 15, a back cover 16, a spine 17 and a plurality of pages 18.** Device 10 shown in FIG. 1 includes an exemplary integrated circuit memory chip 20 within which is stored an electronic index and optionally other information related to **printed work 11, and is securely mounted in back cover 16.** Chip 20 is electrically connected by a ribbon cable 21 to a removable connector 22 for interconnection through an interface cable 24 and communication interface 25 to an access unit 30 such as a hand held computer 31 having a user interface 32 such as a display 34.

('407 patent, col. 6:28-41) (emphasis added)

Case 1:11-cv-00690-SLR   Document 146   Filed 03/31/14   Page 22 of 25 PageID #: 3277

be read directly by users" (*see id.* at 1:28-33),[25] the court adopts TI's construction. Even given this construction, however, after a proper reading of the claims and the specification, the court agrees with Amazon that the invention refers only to printed materials and does not suggest that the patentee invented an electronic book. As such, the court fails to see how the claimed book could objectively read on the accused Kindle - an electronic book reader.

The claim requires, in part, a "plurality of pages of printed information" and "enhancing information stored in machine readable memory permanently attached to the book." (*Id.* at 12:27-32) Further, "a connector [is] attached to the book for connecting the machine readable memory and [an] external computing device." (*Id.* at 12:33-35) This is supported by the specification that identifies the invention as "an enhanced book," which includes,

> in addition to printed material, enhancing material such as additional text, graphics and sounds, the nature of which is limited solely by the ability to store the additional information in digital format, stored in a memory device attached to the book, together with a connector for allowing the enhanced book to be connected to an external computing device for accessing and presenting the enhanced information to the reader.

---

[25] "As used in this application, we intend that the term book includes not only conventional books, but other forms of printed information that could be read directly by users such as maps, newspapers, and other unbound publications that include printed information. Forms of printing such as Braille embossing are also covered." ('407 patent, col. 1:28-33)

(*Id.* at col. 3:21-31) The specification is replete with references to providing "enhancing information" to aid the reader of "printed information"[26] and makes it clear that "printed information" refers to pages provided in a conventional book.[27] A review of the background of the invention indicates that the patentee was concerned with problems associated with printed and electronic indices then available to users of printed publications. (*See, e.g.*, 1:54-57; 2:24-29) The patent distinguishes electronic books from the present invention and points out that "they do not enhance printed publications." (*Id.* at 2:39-47) Additionally, figures 1-8 illustrate a book with printed pages.

*Site Update Solutions, LLC v. Accor North America, Inc.* described the types of claim construction positions the Federal Circuit has held to be frivolous. Civ. No. 11-3306, 2013 WL 2238626, *7 (N.D. Cal. May 21, 2013). In *Raylon, LLC v. Complus Data Innovations, Inc.*, the plaintiff relied on a single sentence in the specification to

---

[26]"The present invention relates generally to printed information such as that included in books and other printed publications. More particularly, the present invention relates to providing enhancing information in a non-printed format, preferably a compressed digital format, that is accessible to the reader of the printed information." (*Id.* at col. 1:9-13) Specifically, "[t]he enhancing information may be displayed as additional text, sounds, graphics (including moving pictures) or combinations thereof. The enhancing information may relate to retrieval of information included within printed publications by reader use of an index of such information. More specifically, the enhancing information relates to electronically searchable indices for printed publications." (*Id.* at col. 1:14-20)

[27]"[M]any if not most readers prefer to obtain information in printed form from books." (*Id.* at cols. 2:67-3:1) "For whatever reason, the vast majority of text, image and graphics is still provided to readers in printed form. The printed format has, in addition to the advantages that make it popular among readers, serious limitations. The amount of information that can be provided in a book is directly related to the size of the book." (*Id.* at col. 3:5-11)

construe a "display being pivotally mounted on said housing" as requiring a "display being capable of being moved or pivoted relative to the viewer's perspective." 700 F.3d 1361, 1368 (Fed. Cir. 2012), *cert. denied*, 134 S. Ct. 94 (U.S. 2013). The figures and the specification, however, described that the display must pivot relative to the housing, not relative to the viewer, as construed by plaintiff. *Id.* at 1368-69. The Federal Circuit held that the plaintiff's position was "contrary to all the intrinsic evidence and [did] not conform to the standard canons of claim construction." *Id.* at 1369. In *Eon-Net*, the Federal Circuit agreed with the district court that plaintiff's claim construction position – that the terms "documents" and "files" were not limited to "hard copy documents" – was objectively baseless as "the written description expressly define[d] the invention as a system for processing information originating from hard copy documents." *See* 653 F.3d at 1326, 1329.

"Reasonable minds can differ as to claim construction positions and losing constructions can nevertheless be non-frivolous. But, there is a threshold below which a claim construction is 'so unreasonable that no reasonable litigant could believe it would succeed,' and thus warrants Rule 11 sanctions." *Raylon*, 700 F.3d at 1368 (citations omitted). In the present case, the court agrees with Amazon that, although TI's proposed definition for the term "book" is reasonable, its definition for "printed" – to encompass "any configuration in which information is presented for direct human perception" – is astonishingly broad. (*See* D.I. 135 at 4) TI argues this construction based on a single sentence in the specification which recites, "[p]rinted work 11 may be a work of any configuration in which information is presented for direct human

23

perception." (*See* 129 at 9; '407 patent, col. 6:42-43) The next sentence, however, reads that, "[t]hus, for example, in addition to a cloth- (or other hard-) bound, or soft-bound book, work 11 may be a magazine, or other paper based media sufficient to carry an electronic memory device as memory chip 17 and allow its operable interconnect to access unit 30." (*Id.* at 6:44-48) This passage does not equate "printed works" with electronic media in support of TI's infringement position. The court concludes that, based on the record, and even in light of what TI proffers as a reasonable pre-suit investigation, TI was not "objectively reasonable under the circumstances." Sanctions, therefore, are warranted.

## V. CONCLUSION

For the foregoing reasons, the court grants Amazon's motion for summary judgment of invalidity (D.I. 107) and denies TI's motion for partial summary judgment of no invalidity. (D.I. 115) The remaining motions – Amazon's motions for summary judgment of non-infringement and to exclude testimony and evidence of Dr. Conte and Mr. McCourt – are denied as moot. (D.I. 111; 104) An appropriate order shall issue.